UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES ADAMS, *et al*., | Case No. 1:24-cv-9378-LAK-OTW |
| Plaintiffs, | |
| v. | |
| GUILLERMO GHARIB, *et al.*, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CYRUS ABRAHIM'S
MOTION TO DISMISS PURSUANT TO FED. CIV. P. 12(b)(2), 12(b)(3), and 12(b)(5)**

**AMINI LLC**
**131 West 35th Street, 12th Floor**
**New York, New York 10001**
**Tel. (212) 490-4700**

***Attorneys for Defendant Cyrus Abrahim***

Defendant Cyrus Abrahim respectfully submits this Memorandum of Law in support of his motion (the "Motion") to dismiss the Complaint (Doc. No. 5, with extra copy submitted herewith) pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(3), and 12(b)(5), for improper venue, lack of personal jurisdiction, and failure to serve process validly.[1]

This case does not belong on this Court's docket. Neither the parties nor the substantive allegations in this case have anything to do with the State of New York or the Southern District of New York. Its only real New York connection is disclosed by the Complaint's signature block: the offices of Plaintiffs' counsel are located here. But their convenience is not a valid basis for either venue or personal jurisdiction.

## RELEVANT FACTS AND ALLEGATIONS OF THE COMPLAINT[2]

The majority of the 214 named Plaintiffs are alleged to live outside the United States, with only approximately 80 alleged to reside in the U.S. Complaint ¶ 18. None of the Plaintiffs are alleged to reside in New York. *Ibid.* Six of the seven named Defendants – all but Mr. Abrahim - are alleged to live outside the United States. Complaint ¶¶ 24-25, 27-30. Mr. Abrahim is a resident of the District of Columbia. Declaration of Cyrus Abrahim ("Abrahim

---

[1] Pursuant to Fed. R. Civ. P. 12(h)(2), Mr. Abrahim reserves his right to seek dismissal for the Complaint's failure to state a claim against him upon which relief can be granted. Given that the whole point of the Motion is that this Court is not the appropriate forum to adjudicate the merits of Plaintiffs' claims, Mr. Abrahim will not burden this Court with merits arguments in the present Motion.

[2] In a Rule 12(b)(3) motion challenging venue "a court may consider evidentiary matters outside the pleadings." *TradeComet.com LLC v. Google, Inc.*, 693 F. Supp.2d 370, 375 n.3 (S.D.N.Y. 2010). The same is true of a Rule 12(b)(2) motion.

Decl.") filed herewith, ¶ 2.[3]  Mr. Abrahim has neither a residence nor an office in New York, has not carried on any continuous or substantial business in New York.  *Id*. ¶ 4.

The Complaint generally alleges that the Defendants violated the Securities Act of 1933 (the "'33 Act") in connection with the Plaintiffs' various alleged purchases of alleged securities.[4] It does not allege that all Plaintiffs purchased the same alleged security, but to the contrary alleges a wide array of different "offerings" of different "securities" over a lengthy period of time.  Indeed, it subdivides the Plaintiffs into four groups based on the general genre of alleged securities they allegedly purchased, thus confirming that not all Plaintiffs purchased alleged securities in each of the alleged offerings.  Complaint ¶¶ 19-23.  However, the Complaint provides no information whatsoever as to which Plaintiffs are in which subgroup and which of them allegedly bought which alleged securities from which Defendant or Defendants.  Given this, the entirely vague and conclusory allegation that (Complaint ¶ 11) "[a]t least one Plaintiff also made purchases or investments in this District" not only does not identify the Plaintiff, but does not connect the unidentified Plaintiff with any specific alleged offering or security or any specific Defendant or even specify which of the defined subgroups this unidentified Plaintiff is alleged to be a member of.

Mr. Abrahim is not alleged to have had anything whatsoever to do with many of the distinct offerings of distinct alleged securities the Plaintiffs' claims are based on.  He goes almost entirely unmentioned in the Complaint's lengthy narrative from ¶¶ 32 to 121, which claims that

---

[3] Plaintiffs inaccurately alleged that Mr. Abrahim resides in Virginia (Complaint ¶ 26), but in their initial report to the Court on their two unsuccessful alleged attempts to make service of process (Doc. No. 10 at 4-5) reported that both attempts were made in Washington, D.C.

[4] Mr. Abrahim does not concede that any of the alleged transactions referenced in the Complaint involved "securities" within the meaning of the '33 Act, but that is another merits issue that need not be addressed for purposes of this Motion.

sales started in the second quarter of 2023.  ¶ 122 makes clear by contrast that Mr. Abrahim's substantive alleged involvement in the alleged offerings began no sooner than December 2023. The Complaint is also clear in alleging that in and after December 2023 an entirely separate series of alleged offerings were made that were controlled by the so-called UA3 team, affiliated with a subset of the Defendants that did not include Mr. Abrahim.  ¶¶ 109, 112, 120.

The only substantive mentions of New York anywhere in the body of the Complaint are: a) the allegation (¶ 10) that certain "NFT's" supposedly relevant to the claims "were listed and sold on the online exchange OpenSea.io" which is alleged to be headquartered in this District; and b) the allegation (¶ 126 & n. 7) that a crypto token allegedly associated with Mr. Abrahim "is sold on the Uniswap exchange," which is alleged to be headquartered in the Eastern District of New York.  The allegation that OpenSea.io is headquartered "in this District" is contradicted by OpenSea's own public press releases, which state that it is headquartered in Miami.   Declaration of John W. Brewer, submitted herewith, Exh. B.  But in any event, as Mr. Abrahim explains, neither OpenSea or Uniswap is the exclusive place where an interested buyer or collected can obtain a particular NFT or crypto token.  Rather, both have numerous competitors, all of which are "aggregators" that promote transactions in whatever NFT's or tokens there appears to be market demand for.  Abrahim Decl. ¶¶ 6, 9.  Indeed, so-called "over the counter" transactions in NFT's and crypto tokens can and do occur without the involvement of any such exchange.  *Ibid*.

Accordingly, there is no basis in the record to assume or infer that any particular Plaintiff who may have purchased any of the Supreme Kong NFT's said to be associated with Mr. Abrahim (Complaint ¶ 126) or any of the Jungle crypto tokens said to be associated with Mr. Abrahim (*ibid*.) actually did so via the OpenSea or Uniswap exchanges, respectively.

It is likewise potentially confusing to speak of NFT's as being "listed" on exchanges since any such "listing" is done on their own initiative by the exchanges themselves, who do not need or generally obtain the consent of an NFT's creator, sponsor, or issuer for such a listing. Abrahim Decl. ¶¶ 7, 10. Specifically, Mr. Abrahim has never authorized or consented to OpenSea's listing of the Supreme Kong NFT, which is alleged in ¶ 126 of the Complaint to be associated with him, nor did he authorize or give consent to Uniswap with regard to its listing of the Jungle tokens. *Ibid*.

**RELEVANT PROCEDURAL HISTORY AND PURPORTED PROOF OF SERVICE**

On April 9, 2025, this Court issued a sua sponte Order to Show Cause due to Plaintiffs' failure to effect timely service. Doc. No. 9. A week later, Plaintiffs responded and stated that they needed more time to serve Mr. Abrahim because they did not yet have an appropriate residential or business address for him. Doc. No. 10. They represented to the Court that they had attempted service at 1210 35th Street, N.W. in Washington, D.C., which is Mr. Abrahim's father's residence, but had been told by his father that Mr. Abrahim did not live there but lived elsewhere in the area. *Id*. at 4. They noted that third parties confirmed to their process server that Mr. Abrahim's father lived alone. *Ibid*. They observed that Mr. Abrahim had reportedly used his father's residential address when he had registered to vote in 2011 (Doc. No. 10-6), but did not argue that that fact made his father's address valid for service in 2025.

The Court then gave Plaintiffs their requested extension of time to serve Mr. Abrahim. Doc. No. 11. Plaintiffs eventually filed a proof of service claiming not to have served Mr. Abrahim in person but to have left the summons and complaint at 1210 35th St., N.W., Washington, D.C. which the process server claimed was Mr. Abrahim's "residence or usual place of abode." Doc. No. 12. Mr. Abrahim himself has confirmed that he does not live at that

address, but lives elsewhere in Washington in a rented apartment with a lease in his own name. Abrahim Decl. ¶ 3.  He has not authorized his father to accept service on his behalf.  *Ibid.*

## ARGUMENT

### I.    THE PURPORTED SERVICE OF PROCESS WAS INVALID

Plaintiffs now claim that the 35th St. address in Washington is Mr. Abrahim's "residence or usual place of abode."  Doc. No. 12.  But Plaintiffs' own prior submissions to this Court, which Plaintiffs relied upon to obtain an extension of time to accomplish service, affirmatively represented to the Court that Mr. Abrahim did not live at that address and that prior attempts to serve him there were "unsuccessful."  Doc. No. 10 at 2.  They did not accompany their purported proof of service with any explanation of this change of position.   In any event, Mr. Abrahim's own declaration establishes that this claim is untrue.

### II.    VENUE IS NOT PROPER IN THIS DISTRICT

"In defending against a motion to dismiss for improper venue, plaintiffs bear the burden of proving that venue is proper."  *Carney v. Beracha*, 996 F.Supp.2d 56, 61 (D. Conn. 2014). There are two potentially relevant venue statutes here:  the general federal venue statute of 28 U.S.C. § 1391, and the '33 Act's own specific venue provision, 15 U.S.C. § 77v.

The general statute is particularly relevant here because it addresses the threshold issue of how to analyze venue in a multi-defendant case when certain of the defendants reside outside the United States.  For venue purposes, subsection 1391(c)(3) provides that those defendants are to be ignored:  "a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants."  In other words, because all of the Defendants other than Mr. Abrahim are alleged to reside outside the United States, the Plaintiffs must show that

venue would be proper in this District if Mr. Abrahim were the only Defendant they had sued. They cannot make that showing.

15 U.S.C. § 77v provides that venue would be appropriate in this District only in two possible ways:  first, if this is "the district wherein [Mr. Abrahim] is found or is an inhabitant or transacts business" or second if (emphasis added) this is "the district where the offer or sale took place, *if [Mr. Abrahim] participated therein*."  The record shows that neither of these are true. Mr. Abrahim does not reside or do business in New York, as shown above.  And Plaintiffs have not alleged that even a single sale took place in this District that Mr. Abrahim participated in.

Plaintiffs' invocation of OpenSea does not allege any sale in this District that Mr. Abrahim participated in.  First of all, as shown above, OpenSea's own public statements that it is headquartered in Miami undermine Plaintiffs' claim that it is headquartered in this District. Second, as explained above, because OpenSea is just one of many different ways in which a Plaintiff who might wish to acquire a Jungle Kong NFT could do so, there is no allegation that any Plaintiff actually did so.  Just as importantly, while the Complaint may insinuate that Mr. Abrahim encouraged some (again, unidentified) Plaintiffs to obtain Supreme Kong NFT's, there is no allegation that he ever encouraged them to do so via OpenSea, specifically, as opposed to via any of the other possible avenues available to them.[5]

Finally, there is no reason why the headquarters of OpenSea, even if it were in Manhattan rather than Miami, would be relevant to venue even if there were a showing that Mr. Abrahim had had some involvement in a sale of an NFT on OpenSea.  Consider a case arising out of a sale of goods arranged via eBay between a seller in Michigan and a buyer in Indiana.  There is no

---

[5] The same would be true of any purchase by any Plaintiff of Jungle tokens via Uniswap, but Uniswap is not even alleged to be headquartered in this District.

obvious reason why a resulting lawsuit (with eBay not named as a party) should or could be venued in the Northern District of California, where eBay has its headquarters. Similarly, if the goods giving rise to the lawsuit had been shipped from Michigan to Indiana via Federal Express but Federal Express was not a party to the lawsuit, there would be no basis to venue the lawsuit in the Western District of Tennessee, where Federal Express has its headquarters. *See United States v. Brennan*, 183 F.3d 139 (2d Cir. 1999) (reversing mail fraud conviction from Eastern District of New York for improper venue when only nexus to Eastern District was testimony from U.S. Postal Service witness that items mailed in Manhattan to addresses in Texas and Europe would have been transported by the Postal Service through an airport in the Eastern District en route to their destinations).

For the same reasons, this is not a District where "a substantial part of the events or omissions giving rise to the claim" against Mr. Abrahim are alleged to have occurred, so venue cannot be based on subsection 1391(b)(2) of the general venue statute.

## III.    IN THE ALTERNATIVE, THIS COURT LACKS PERSONAL JURISDICTION OVER MR ABRAHIM

Since this Court is not an appropriate forum for this lawsuit under either potentially relevant venue statute, the Court need not reach the separate question of personal jurisdiction before dismissing the action for improper venue. That said, procedurally proper service of process upon Mr. Abrahim, which as shown above has not been accomplished, is an absolute prerequisite for any exercise of personal jurisdiction over him. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012). However, any valid subsequent service would be irrelevant because there is separately no statutory basis for personal jurisdiction over Mr. Abrahim under CPLR 302. *Licci*, 673 F.3d at 60 ("We therefore look to New York law in

determining whether personal jurisdiction is available in New York over a non-resident defendant").

Under CPLR 302(a)(1), New York law imposes personal jurisdiction over a non-domiciliary who "transacts any business within the state" with respect to a cause of action arising from that transaction of business.  But the state's Court of Appeals has made clear that simply maintaining a website or internet presence that can be accessed in New York is not such a transaction of business, even if it leads New York residents to contact the out-of-state business, as is not even alleged to have happened here.  In *Paterno v. Laser Spine Institute*, 24 N.Y.3d. 370 (2014), the New York resident plaintiff, suffering from back pain, accessed the website of a Florida-based medical practice, and then initiated a lengthy back and forth discussion over email and telephone that led to the plaintiff traveling to Florida and having surgery there.  The Court of Appeals held unanimously that there was no personal jurisdiction in New York over the defendants in the subsequent medical malpractice case.  That the defendants' internet promotion of their services could be accessed in New York, and that they responded to the plaintiff's inquiry and communicated with him while he was in New York both before and after the surgery were not, as a matter of law, the sort of "transaction of business" the statute requires.  Similarly, negotiating a transaction over telephone or email with a counterparty who resides in New York (which, again, Mr. Abrahim is not alleged to have done), is not necessarily enough to constitute transacting business for jurisdictional purposes.  *Rosenblatt v. Coutts & Co. AG*, 750 F. App'x 7 (2d Cir. 2018).[6]

---

[6] Here, the irrelevance of the "exchanges" such as OceanSea to personal jurisdiction is even greater than it is to venue.  Even if one of the Plaintiffs had chosen to acquire a Jungle Kong NFT via OceanSea or a Jungle token via Uniswap, that would not have been "the transaction of business" *by Mr. Abrahim*, but at most by the Plaintiff and whatever third-party secondary-market seller that Plaintiff might have used the exchange to connect with.

A recent case reversing a dismissal for lack of personal jurisdiction illustrates the necessary showing that Plaintiffs here have not made.  In *American Girl, LLC v. Zembrka*, 118 F.4th 271, 277 (2d Cir. 2024), the out-of-state defendant had "accepted orders [for physical goods] with New York shipping addresses, sent confirmatory emails with New York shipping addresses containing commitments to ship to those New York addresses, and accepted payments from a customer with a New York address."  Even though the defendant had unilaterally cancelled those orders before shipment as it belatedly released its litigation exposure, the court had (*ibid.*) "little difficulty concluding that this activity constitutes transacting business within New York for purposes of jurisdiction under § 302(a)(1)."

Indeed, Plaintiffs nowhere allege that Mr. Abrahim ever targeted New York residents. That the Complaint alleges that "the Defendants were very much aware that their investors included *American* citizens and residents," Complaint ¶ 14 (emphasis added),[7] simply confirms that they are unable to allege any similar awareness that any alleged "investors" were New York residents.

## IV.   THE ACTION SHOULD BE DISMISSED OR, IN THE ALTERNATIVE, TRANSFERRED TO THE DISTRICT OF THE DISTRICT OF COLUMBIA

28 U.S.C. § 1406 provides that when venue is improper, the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district … in which it could have been brought."  Especially where, as here, no valid service of process has been made even after an extension of time was granted, we believe that dismissal would be the better course.  However, we note in the alternative it appears that this action "could have been brought" in the District of

---

[7] The Complaint here vaguely refers to "Defendants" as if lumping them all together without any allegation that Mr. Abrahim was actually among the Defendants who participated in the referenced meetings and other actions said to have given rise to this supposed awareness.

the District of Columbia ("D.D.C.").  As to Mr. Abrahim, both personal jurisdiction and statutory venue would be satisfied.  Venue would be proper as to the other Defendants under 28 U.S.C. § 1391(c)(3), and Plaintiffs' theories regarding personal jurisdiction over the Defendants who live overseas would be just as strong in the D.D.C. as in this District.

Transfer in the interest of justice would also separately be authorized by 28 U.S.C. § 1404(a) even if the Court were to think that Plaintiffs might be able to satisfy the venue and jurisdiction prerequisites in this District under a sufficiently aggressive interpretation of the controlling law.  Indeed, if the Court transfers under that provision it would technically moot the other issues.  See *Blum v. Salomon*, 2006 WL 3851157 *5 (S.D.N.Y. 2006) (granting transfer under 1404(a) and not reaching personal jurisdiction and venue issues that had been briefed).

## CONCLUSION

For the foregoing reasons, this action should be dismissed for improper venue, lack of personal jurisdiction, and/or insufficient service of process as against Mr. Abrahim.

Dated:  New York, New York
June 20, 2025

AMINI LLC

By: /s/ *John W. Brewer*
     John W. Brewer
131 West 35th Street, 12th Floor
New York, New York 10001
Tel. (212) 490-4700
jbrewer@aminillc.com

*Attorneys for Defendant Cyrus Abrahim*

10

## **WORD COUNT CERTIFICATION**

I certify under penalty of perjury that the foregoing document has 3189 words as calculated using the word-count feature of the word-processing program used to prepare the same, and so complies with Local Civil Rule 7.1(c).  Executed this 20th day of June, 2025.

_/s/ John W. Brewer_
John W. Brewer
