**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
JAMES ADAMS, et al.                          :
                                             :
                    Plaintiffs,              :           24-CV-9378 (LAK) (OTW)
                                             :
                    -against-                :           **REPORT AND RECOMMENDATION**
                                             :           **TO THE HONORABLE LEWIS A.**
CYRUS ABRAHIM, et al.                        :           **KAPLAN**
                                             :
                    Defendants.              :
                                             :
------------------------------------------------------------x

**ONA T. WANG**, **United States Magistrate Judge**:

I.      **INTRODUCTION**

This is a putative class action brought on behalf of two hundred and fourteen (214) Plaintiffs (collectively, the "Plaintiffs"), asserting claims for: (1) offer and sale of unregistered securities in violation of Sections 5 and 12(a)(1) of the Securities Act of 1933 (the "Securities Act"); and (2) the making of materially false and misleading statements in connection with the offer and sale of securities, in violation of Section 12(a)(2) of the Securities Act. (ECF 5, Compl. at ¶¶ 160-192). The seven named defendants are Guillermo Gharib, Ashley Harris, Cyrus Abrahim, James Abbos Binaiz, Peter McInnes, Nicholas Schmidt, and Oliver Wood. *Id.*

Before the court is a motion to dismiss filed by the sole appearing Defendant in this case, Cyrus Abrahim ("Abrahim").  Abrahim moves to dismiss pursuant to: (1) Fed. R. Civ. P. 12(b)(2) for improper venue; (2) Fed. R. Civ. P. 12(b)(3) for lack of personal jurisdiction; and (3) Fed. R. Civ. P. 12(b)(5) for improper service. (ECF 14). I respectfully recommend the Court **DENY** Defendant's motion to dismiss.

1

## II.    BACKGROUND

### A.  Factual Background

The complaint alleges that Defendant Abrahim, as founder and leader of the digital community "Jungle Labs," issued and promoted non-fungible tokens ("NFTs") and other digital assets that provided purchasers with access to TradeAI investment pools and StakX syndicates, which Plaintiffs contend constitute investment contracts and therefore securities under the Securities Act. (Compl. ¶ 146). Plaintiffs further allege that Abrahim, along with other defendants, repeatedly solicited and encouraged investments in these securities by emphasizing the potential for profits derived from trading activities conducted by Defendant Gharib and others, including Abrahim himself. (Compl. ¶ 186). According to the complaint, these securities were offered and sold through materially misleading statements and omissions, in violation of Section 12(a)(2) of the Securities Act. *Id.*

### 1.   *Promotion of Securities Trading via Discord*

Specifically, Plaintiffs state that on December 6, 2023, Abrahim announced on Discord the formation of his weekly syndicate, titled the "Kong Syndicate." (Compl. ¶ 122). In the Discord group, Abrahim stated that the funds submitted to the syndicate would be collected in an account on Binance to be traded, with profits to be paid to the investors as follows: 45% of the profits would be paid to the 'StakX team,' 40% to the 'Depositors,' 11.25% to 'Jungle Labz Treasury,' 2.5% to 'Anarkey,' and 1.25% to the 'Governance Team.' *Id.* The Discord message from Abrahim also stated a "performance expectation" of "1.6-6% growth a day on average." *Id.* Plaintiffs claim that Abrahim continued to send weekly messages for the next few months

regarding additional "rounds" of "deposit windows" for individuals to become depositors in the syndicate. (Compl. ¶ 123).

Plaintiffs plead that Abrahim caused or directed investors participating in his investment syndicates to purchase digital assets under his control in order to increase their value. (Compl. ¶ 126). Plaintiffs allege that these required assets included either Abrahim's NFTs, such as the "Supreme Kong" NFTs offered on the OpenSea.io website, his crypto tokens known as the "Jungle Token", or a combination of both. *Id.* According to the Complaint, the investors' allocations and permissible investment amounts were tied to the quantity of these assets each investor held. *Id.*

Plaintiffs further allege that Abrahim required investors to keep these assets "staked" in their crypto wallets and to refrain from selling them. *Id.* On or about February 12, 2024, Defendant Abrahim is alleged to have introduced a "passive yield" program for certain investors holding at least 10,000 Jungle Tokens, under which ten percent (10%) of each syndicate's profits would be withheld and distributed to those larger token holders. *Id.*

Plaintiffs also plead that Abrahim expanded the investor base by bringing additional groups of investors into StakX syndicates under the "Supreme Kong" and "Jungle Labs" brands. These investors, too, were required to purchase Abrahim's crypto assets. (Compl. ¶ 128). The Complaint alleges that, as a result, the value of the Jungle Token increased by more than 3,000% in early 2024. Plaintiffs further allege that, during this period, wallets without recent purchase activity of Jungle Token sold substantial amounts of the token, and that insiders— including Abrahim—took advantage of the inflated value to liquidate significant holdings, after which the token's value declined sharply. *Id.*

### 2. Promotion of Securities Trading in New York City

The defendant specifically marketed his Supreme Kong NFTs, which investors purchased with the intention of gaining access to his StakX syndicate, during an "in real life" event held in New York City. On April 13, 2023, he made a public statement via Twitter regarding an event in Manhattan, describing it as a "token gated event" exclusively for "holders of sponsors only" (ECF 21 at 5-6). Furthermore, a significant number of the NFTs that are central to this litigation were listed and sold on the online exchange OpenSea, a company alleged to be headquartered in this District. (Compl. ¶ 10).

### B. Procedural Background

#### 1. Service

On April 9, 2025, I issued an Order to Show Cause as to why I should not recommend dismissal of this action for failure to serve Defendant Abrahim. (ECF 9). Plaintiffs responded, requesting an extension to complete service, stating that they had attempted to serve Abrahim four times. (ECF 10 at 2). Before filing this suit, Plaintiffs' counsel was first in contact with Abrahim's then-counsel and asked then-counsel to accept service on Abrahim's behalf. *Id.* Prior counsel indicated that he no longer represented Abrahim and was not authorized to accept service on his behalf. *Id.* at 4. Plaintiffs' counsel then attempted service three times[1] at 1210 35th Street NW, Washington, D.C. 20007 (herein after referred to as the "35th Street address"), an address they procured based on their own research.

---

[1] Service was attempted on February 10, 11, and 13, 2025. On February 11, the process server spoke to Abrahim's father who stated that Abrahim did not reside at this address. On February 13, the process server spoke to "on-site workers" who informed the process server that Abrahim's father was the sole occupant of the house and/or they did not recognize Abrahim. (ECF 10 at 4).

Additional research led the process server to believe that 1680 Wisconsin Avenue was a business address for Abrahim, but service at this address was also unsuccessful.[2] *Id.* Plaintiffs' counsel's subsequent research revealed that Abrahim's 2011 voter registration lists the 1210 35th Street NW address as his address. *Id.* at 5. On March 21, 2025, Plaintiffs sent a 'Notice of Lawsuit and Request to Waive Service' pursuant to Rule 4(d) via Federal Express to Abrahim at 1210 35th Street NW, Washington, DC 20007. The waiver request was delivered on March 24, 2025. *Id.* No executed waiver of service has been received to date.

On April 21, 2025, I granted Plaintiffs' extension for time to serve to June 20, 2025. (ECF 11). On May 27, 2025, the process server delivered the summons at the 35th Street address with Abrahim's father and mailed a copy to the 35th Street address. (ECF 12).

## III.    DISCUSSION

### A.  Service under Rule 12(b)(5)

Abrahim asserts that he lives in an apartment in Washington, D.C., but not with his father at the 35th Street address, and that his father is "not authorized" to accept service on his behalf. (ECF 24; Abrahim Decl. ¶ 3).

The plaintiff bears the burden of establishing that service was sufficient. *Khan v. Khan*, 360 Fed. Appx. 202 (2d Cir. 2010). Before the Court "may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Accordingly, the Court must first address Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(5) before their motion under

---

[2] The process server attempted service at this address and concluded that the building is no longer an office and was occupied by the Romanian Embassy to the United States starting in February 2025. (ECF 10 at 4-5).

Fed. R. Civ. P. 12(b)(2) and 12(b)(3). To resolve a motion made under Rule 12(b)(5), the Court must "look to matters outside the complaint." *Koulkina v. City of New York*, 559 F. Supp. 2d 300, 311 (S.D.N.Y. 2008). Even if a district court finds that a defendant was not properly served, such a finding "does not [ ] require dismissal of [the] action, since ... proper service may still be obtained." *SEC v. Gilbert*, 82 F.R.D. 723, 727 (S.D.N.Y. 1979) (citing *Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir. 1972)).

To be sufficient, service must comply with Fed. R. Civ. P. 4. *DeLuca v. AccessIT Group, Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010). Under Rule 4(e), an individual defendant may be served by delivering a copy of the summons and complaint (i) personally to the defendant, (ii) to an individual who resides at the defendant's "dwelling or usual place of abode," or (iii) to an agent of the defendant authorized to receive such process. Fed. R. Civ. P. 4(e)(2)(A)-(C). In the alternative, the plaintiff may also effectuate service by any means authorized by the state law of "the state where the district court is located or where service is made," here the law of New York or the District of Columbia. Fed. R. Civ. P. 4(e)(1). In New York, CPLR § 308 controls service on natural persons, and provides that service may be made, *inter alia,* by delivering the summons to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by mailing the summons to the person's last known residence or his or her actual place of business. N.Y.Civ.Prac.L. & R. § 308.

It is undisputed in this District that an individual can have multiple dwelling houses or usual places of abode, provided each contains sufficient indicia of permanence. *Jianjun Chen v. WMK 89th St. LLC*, No. 16-CV-5735 (GHW), 2020 WL 2571010, at *8 (S.D.N.Y. May 20, 2020) (citing *Nat'l Dev. Co. v. Triad Holding Corp.,* 930 F.2d 253, 257 (2d Cir. 1991)) (affirming service

at one of multiple residences). In *Jaffe & Asher v. Van Brunt*, the court identified key positive indicators to determine sufficient permanence: maintaining a private bedroom at the location, keeping personal clothing at the address, staying at that address when in the geographic area, maintaining a private phone line and fax machine, and receiving mail including financial statements. 158 F.R.D. 278, 280 (S.D.N.Y. 1994). Crucially, the Court emphasized that representations to third parties that the location was the defendant's residence, including requesting billing at that address and using that address on correspondence, constituted significant evidence of permanence. *Id.*

Plaintiffs allege that service was proper on Abrahim at the 35th Street address because it qualifies as Abrahim's "usual place of abode," as evidenced by his 2011 voter registration and because he registered a car to that address as recently as January 2025, neither of which he has ever updated to reflect a new address. ECF 21 at 15. Abrahim, in a declaration, claims that the 35th Street address is not his residence, although he does admit to living at an apartment "elsewhere in Washington, D.C., only a few miles away from the [35th Street address], with a lease in [his] own name." (ECF 24; Abrahim Decl. ¶ 2). He also stated that he cannot verify the address on his vehicle registration at the time of his declaration due to his travels. (ECF 24; Abrahim Decl. ¶ 4). He does not address his voter registration.

1. *Defendant has not rebutted the prima facie showing that service was proper*

"[A]process server's affidavit of service establishes a prima facie case as to the method of service and, therefore, gives rise to a presumption of proper service" *Wells Fargo Bank, NA v. Chaplin,* 65 A.D.3d 588, 589, 884 N.Y.S.2d 254; *see U.S. Natl. Bank Assn. v. Melton,* 90 A.D.3d 742, 743, 934 N.Y.S.2d 352. "'Although a defendant's sworn denial of receipt of service

generally rebuts the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing, no hearing is required where the defendant fails to swear to specific facts to rebut the statements in the process server's affidavits.'" *BAC Home Loans Servicing, LP v. Carrasco,* 160 A.D.3d 688, 689, 71 N.Y.S.3d 366, quoting *Scarano v. Scarano,* 63 A.D.3d 716, 716, 880 N.Y.S.2d 682 [internal quotation marks omitted]. "The sworn denial of receipt of service must be a 'detailed and specific contradiction' of the allegations in the process server's affidavit." *Rodriguez v. 60 Graham, LLC,* 173 A.D.3d 1095, 1095–1096, 100 N.Y.S.3d 555, quoting *Bankers Trust Co. of Cal. v. Tsoukas,* 303 A.D.2d 343, 344, 756 N.Y.S.2d 92.

Plaintiffs effected service at the 35th Street address on May 27, 2025 (ECF 12), and Abrahim presented no evidence of the contrary beyond his own self-serving declaration of denial. (ECF 24 at ¶ 3). Abrahim thus has failed to rebut the prima facie showing that service is proper at this address. Simply denying that the 35th Street address is his residence, without presenting contrary evidence, is not a sufficiently "detailed and specific contradiction" of the allegations in the process server's affidavit to rebut the presumption of proper service.

2. *Plaintiffs have provided sufficient indicia of permanence*

Plaintiffs point to two pieces of data to support that service at 35th Street was sufficient: Abrahim's 2011 voter registration and his January 2025 vehicle registration. (ECF 23-7 at 7). Plaintiffs provide a LexisNexis "SmartLinx®Person Report" stating that the "Latest Registration Date" of Abrahim's car to this address was January 25, 2025, one month prior to the first attempt of service at the 35th Street address. (ECF 23-7 at 7). That same report also linked Abrahim's 2011 voter registration to this address. *Id.* Defendant has not provided any facts or

details to suggest that Plaintiffs could not rely on his voter registration or vehicle registration to serve Abrahim at the 35th Street address.

Plaintiffs cite cases from other districts that hold voter registration and vehicle registration may be sufficient "badges of permanence" for the purposes of determining "usual place of abode." (ECF 21 at 11-12). I also do not read *Polygram Merchandising* to stand for the proposition that vehicle registration, alone, is a sufficient badge of permanence indicating a person's usual place of abode; rather, Judge Baer found that the timing of the registration, as well as the address used, were relevant to identifying a person's usual place of abode. *Polygram Merchandising, Inc. v. New York Wholesale Co.,* No. 97 CIV 6489 (HB), 2000 WL 23287, at *3 (S.D.N.Y. Jan. 13, 2000) (referencing several other indicia, such as bank records and a driver's license renewal, in finding that service was sufficient).

Abrahim's uncontested voter and motor vehicle registrations are sufficient indicia of permanence to find, in this instance, that the 35th Street address is sufficient for personal service. *Ajmad v. Crescioni,* No. 23-CV-5776 (VSB) (JLC), 2024 WL 78558, at *2 (S.D.N.Y. Jan. 8, 2024) (suggesting that process servers ordinarily rely on voter registration and DMV records to locate defendants and that, where those sources do not yield an address sufficient for personal service, plaintiffs may then seek leave to effect substituted service).

3.    *Alternative service may still be obtained over Abrahim*

If the Court finds that Abrahim's conclusory denials of service are sufficient to rebut the presumption of proper service, or that Abrahim's voter and motor vehicle registrations are not sufficient badges of permanence to find that Abrahim has been served, the Court should still

extend time for Plaintiffs to serve Abrahim again, or to allow Plaintiffs to move for substitute or alternative service.

"[I]f service is not made upon a defendant within 120 days after filing of the complaint, the action shall be dismissed as to that defendant unless good cause for the failure to serve is shown." *Crossen v. Bernstein*, No. 91 CIV. 3501 (PKL), 1994 WL 281881, at *3 (S.D.N.Y. June 23, 1994); *see also* Fed.R.Civ.P. 4(m). Under Rule 4(m), the Court *must* extend the time to serve if plaintiff has shown good cause, and *may* extend the time to serve even in the absence of good cause. The purpose of Rule 4(m) is to prod the slow-footed plaintiff, not to reward the crafty or evasive defendant. Adam N. Steinman, *Federal Practice & Procedure* ("Wright & Miller") § 1137 (4th ed.).

In determining whether a plaintiff has shown good cause, courts weigh the plaintiff's reasonable efforts and diligence against the prejudice to the defendant resulting from the delay. *AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt., L.P.,* 197 F.R.D. 104, 108 (S.D.N.Y.2000). Here, Plaintiffs have acted diligently in seeking to serve process and have demonstrated that good cause exists. Plaintiffs properly sought the issuance of summonses well within Rule 4(m)'s 90-day window for service, and the summons correctly named Abrahim. Plaintiffs did not file any proof of service, attempted or executed, until after I issued the Order to Show Cause why I should not recommend dismissal of this action for faither to prosecute under Fed. R. Civ. P. 41(b). (ECF 9). In light of their detailed efforts to serve Abrahim, I granted Plaintiffs an extension to serve Abrahim to June 20, 2025. (ECF 10).

Even absent a showing of good cause, however, I would find it appropriate to exercise my discretion to grant Plaintiffs additional time to serve. In determining whether a

discretionary extension is appropriate in the absence of good cause, a court considers the following four factors: (1) whether any applicable statutes of limitations would bar the action once refiled; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether defendant attempted to conceal the defect in service; and (4) whether defendant would be prejudiced by extending plaintiff's time for service. *Sleigh v. Charlex, Inc.,* No. 03 Civ. 1369, 2004 WL 2126742, at *5 (S.D.N.Y. Sept. 14, 2004).

In this case, all four factors weigh in favor of granting Plaintiffs a discretionary extension of time to serve Abrahim. It appears that the statute of limitations would bar this action from being refiled, satisfying the first factor. The second and third factors also favor Plaintiffs, as Abrahim had actual notice of the claims before the action was filed, and may have concealed a defect in service. Finally, there is no indication that Abrahim would be prejudiced by an extension. Notably, Plaintiffs' difficulties in completing service seem attributable less to neglect and more to Abrahim's conduct—behavior that Rule 4(m) is not meant to reward. *See Esqueda v. NYU Langone Hospitals*, No. 20-CV-4501, 2021 WL 4340731, at *3 (S.D.N.Y. Sept. 23, 2021) (quoting Wright & Miller, § 1137). Accordingly, whether under a finding of good cause or in the Court's discretion, Plaintiffs should be granted additional time to effect service on Abrahim if prior service is not found to be sufficient.

### B.  Personal Jurisdiction under Rule 12(b)(2)

A Rule 12(b)(2) motion shall be granted where the court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). Where a Rule 12(b)(2) motion is raised on the basis of the pleadings, the plaintiff only bears the burden of making a "prima facie showing" of jurisdiction through factual allegations, either in the pleadings or through supporting affidavits.

*Whitaker v. Am. Telecasting, Inc.,* 261 F.3d 196, 208 (2d Cir. 2001). All such allegations shall be viewed "in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993).

In deciding such a motion, "a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.,* 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir. 1981)). The showing plaintiffs are required to make is a "sliding scale" that "varies depending on the procedural posture of the litigation." *Dorchester Fin. Sec.,* 722 F.3d at 84 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).

The court must first determine whether there is a statutory basis for exercising personal jurisdiction, and then decide "whether the exercise of personal jurisdiction . . . comports with the Due Process Clause of the United States Constitution." *Sonera Holding B.V. v. Çukurova Holding A.Ş.,* 750 F.3d 221, 224 (2d Cir. 2014). In the first part of the analysis, the court "applies the forum state's personal jurisdiction rules," unless a federal statute "specifically provide[s] for national service of process." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997).

### 2.  15 U.S.C. § 77v(a)

As relevant here, the federal Securities Act authorizes world-wide service of process under 15 U.S.C. §§ 77v(a) and permits the exercise of personal jurisdiction provided that plaintiff meets the due process standards imposed by the Fifth Amendment. *S.E.C. v. Softpoint, Inc.*, No. 95 CIV. 2951 (GEL), 2001 WL 43611, at *2 (S.D.N.Y. Jan. 18, 2001). "The due process

test for personal jurisdiction has two related components: the 'minimum contacts inquiry' and the 'reasonableness' inquiry. The court must first determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Metro. Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 567 (2d Cir. 1996) (internal citations omitted). When the exercise of jurisdiction flows from a federal statutory grant that authorizes suit under federal question jurisdiction and nationwide service of process, however, the Fifth Amendment applies, and the Second Circuit has consistently held that the minimum contacts test in such circumstances looks to contacts with the entire United States rather than with the forum state. *S.E.C. v. Morton,* No. 10-CV-1720 (LAK) (MHD), 2011 WL 1344259, at *12 (S.D.N.Y. Mar. 31, 2011)*,* report and recommendation adopted, 2011 WL 11768504 (S.D.N.Y. Nov. 3, 2011) (citing cases). If such contacts are found, the court may assert personal jurisdiction so long as "it is reasonable [to do so] under the circumstances of the particular case." *Id.*

### 3. Minimum contacts

"To determine whether a defendant has the necessary 'minimum contacts,' a distinction is made between 'specific' and 'general' personal jurisdiction." *Schentag v. Nebgen,* No. 17-CV-8734 (GHW), 2018 WL 3104092, at *15 (S.D.N.Y. June 21, 2018). A court may exercise "specific jurisdiction" over a defendant where the suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

When a federal statute, such as 15 U.S.C. § 77v(a), authorizes nationwide service of process, a court may exercise personal jurisdiction if the defendant has sufficient minimum

contacts with the United States as a sovereign, rather than with a particular state. *S.E.C. v. Straub*, 921 F. Supp. 2d 244, 253 (S.D.N.Y. 2013). For defendants like Abrahim who are U.S. domiciliaries, the "minimum contacts" analysis is usually satisfied because they are, by definition, inhabitants of the United States.[3]

> *4.   Traditional notions of fair play and substantial justice*

"Once it has been decided that a defendant purposefully established minimum contacts within the forum ..., these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice,' " *Burger King Corp. v. Rudzewicz,* 471 U.S. at 476, 105 S.Ct. 2174 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. at 320, 66 S.Ct. 154);

To determine reasonableness, the Court asks "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice' " and must consider five factors: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 568 (2d Cir. 1996).

---

[3] And even if the Court were to address contact with New York State, I find that Defendant's promotion of the event in New York City on April 13, 2023 would be sufficient for specific jurisdiction.

Abrahim has purposefully availed himself of the privileges of New York. He hosted and promoted at least one event in New York City in furtherance of his allegedly fraudulent acts that gave rise to this lawsuit. (ECF 21 at 9).

Jurisdiction is also reasonable—Abrahim does not articulate any burdens that New York jurisdiction would impose on him. Moreover, although Abrahim lives in the D.C. area (Compl. ¶¶ 26, 158), "the realities of modern transportation and communication, as well as the nature of civil litigation ... serve to reduce the burdens of litigating in a distant forum." *S.E.C. v. Softpoint, Inc.*, 2001 WL 43611, at *6 (S.D.N.Y. Jan. 18, 2001). New York has a strong interest in adjudicating a case where the complained of conduct occurred; both the Plaintiffs and the interstate judicial system will benefit from the efficient resolution of this case in New York, where evidence and discovery may be easily collected; and there is no reason the shared interest of the states will not be advanced by litigating the case in New York.

Accordingly, the Court may exercise personal jurisdiction over Abrahim.

### C.  Venue under Rule 12(b)(3)

Rule 12(b)(3) provides that a court may dismiss a claim for improper venue. *See* Fed. R. Civ. P. 12(b)(3). Plaintiff bears the burden of proof of establishing proper venue in order to survive a Rule 12(b)(3) motion. *See United States ex rel. Donohue v. Carranza*, 585 F. Supp. 3d 383, 387 (S.D.N.Y. 2022). And "[a]s with a motion to dismiss for lack of subject matter jurisdiction, courts may consider materials outside the pleadings on a motion to dismiss for improper venue." *Caremark Therapeutic Servs. v. Leavitt*, 405 F. Supp. 2d 454, 457 (S.D.N.Y. 2005); *TradeComet.com LLC v. Google, Inc.*, 693 F. Supp. 2d 370, 375 n.3 (S.D.N.Y. 2010).

15

Venue is determined not by reference to the general venue provisions, 28 U.S.C. § 1391, but to the special venue provisions of the Securities Act. *Zorn v. Anderson*, 263 F. Supp. 745, 747 (S.D.N.Y. 1966). 15 U.S.C. § 77v allows for venue in this District as follows:

> Any such suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein...

Since Abrahim is not found in this district, nor is he an inhabitant of this district, venue is properly laid here only if: (1) he transacts business in this district; or (2) this is the district where the offer or sale took place, and (3) Abrahim participated therein.

### 1.   *Transacts business*

Under both the Securities Act of 1933 and the Securities Act of 1934, the concept of 'transacting business' under the Acts' venue provisions requires less business activity than that necessary to sustain jurisdiction under a 'doing business' or 'minimum contacts' standard; it is intended to have a more flexible and broader meaning than the jurisdictional predicates. *Zorn v. Anderson,* 263 F. Supp. 745, 747 (S.D.N.Y. 1966) (citing cases).

Plaintiffs allege that venue is proper because the Defendants transacted business in this District, and/or many of the acts charged herein occurred in substantial part in this District, primarily that many of the digital assets that are at issue in this litigation were listed and sold on online exchanges that are headquartered in this district. (Compl. ¶ 10). Additionally, they plead that the events were promoted through Twitter and Discord, which are accessible in this District. *Id.* at ¶ 11. In their responsive papers, Plaintiffs state that venue is proper as to Defendant Abrahim specifically because he came to Manhattan to host a party that promoted his Supreme Kong NFTs, and that he required his community to purchase his Supreme Kong

NFTs on the OpenSea purchasing platform, a company allegedly headquartered within the District, in order to participate in the StakX syndicates. (ECF 21 at 18).

### 2. Offer or Sale and Abrahim's Participation

Abrahim took at least some steps in this District related to the alleged securities fraud by promoting the sale of securities on a platform allegedly based in this District, promoting the sale of securities via Discord and Twitter accessible to individuals in this District, and promoting an event in this District on Twitter. Any act performed in the District that is material to and in furtherance of a fraudulent scheme is sufficient to justify venue. *Steinberg & Lyman v. Takacs,* 690 F.Supp. 263, 267 (S.D.N.Y.1998) ("[A]ny non-trivial act in the forum district which helps to accomplish a securities law violation is sufficient to establish venue.") (quoting *First Fed. Sav. & Loan v. Oppenheim, Appel, Dixon,* 634 F.Supp. 1341, 1350 (S.D.N.Y.1986) and citing cases). Accordingly, venue is proper in this District.

### IV.    CONCLUSION

For the foregoing reasons, I respectfully recommend that Defendant's motion to dismiss be **DENIED**.

### V.    OBJECTIONS

In accordance with 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days (including weekends and holidays) from receipt of this Report to file written objections. *See also* FED. R. CIV. P. 6. A party may respond to any objections within fourteen (14) days after being served. Such objections, and any responses to objections, shall be addressed to

the Honorable Lewis A. Kaplan, United States District Judge. Any requests for an extension of time for filing objections must be directed to Judge Kaplan.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237–38 (2d Cir. 1983).

Respectfully submitted,


_s/ Ona T. Wang_____

Dated:  February 3, 2026                                    **Ona T. Wang**
              New York, New York                    United States Magistrate Judge

18